Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8138 | **DATE** | 8/9/2002 |
| **CASE TITLE** | Ashley Arnold vs. Janssen Pharmaceutica, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 9/5/2002 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to file a response in excess of 15 pages [34-1] is granted. Defendants' motion to dismiss [7-1] is granted in part and denied in part. A status hearing is set for September 5, 2002 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

AUG 13 2002
date docketed

40

courtroom deputy's initials

Date/time received in central Clerk's Office

mailing deputy initials

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 8138 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| JANSSEN PHARMACEUTICA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**
**AUG 1 3 2002**

## MEMORANDUM OPINION & ORDER

Plaintiff Ashley Arnold brings this action against her former employer, Janssen Pharmaceutica, Inc., and its parent company, Johnson & Johnson, Inc. During the course of her employment from May 1995 through February 2001, she alleges that she was denied promotions, had her work product and assignments diverted, was excluded from meetings and job functions, and was subjected to inappropriate comments, gestures, and conduct. Her complaints allegedly prompted a demotion and further mistreatment, culminating in her constructive discharge on February 27, 2001. Arnold claims that her sex and disability (chronic pain syndrome) motivated the adverse treatment. Her complaint consists of twelve counts: sex discrimination, sexual harassment, and retaliation (Counts I, II, and III) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; differential treatment, retaliation, and denial of reasonable accommodation (Counts IV, V, and VI) under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12201 *et seq.*; intentional infliction of emotional distress (Count VII); breach of contract (Count VIII); negligent misrepresentation (Count IX); negligent retention (Count X); and negligent training and supervision against Janssen (Count XI) and against Johnson & Johnson (Count XII). Defendants move to dismiss the complaint in its entirety. For

the reasons set forth below, the motion is denied as to Counts I through VII, granted in part and denied in part with respect to Count VIII, and granted as to Counts IX through XII.

## Analysis

### I. Illinois Human Rights Act

Defendants argue that Arnold's state law claims are preempted by section 8-111(C) of the Illinois Human Rights Act ("IHRA"). 775 ILCS 5/8-111(C) (West 2001). In relevant part, this section provides that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." Where an Illinois state court lacks jurisdiction over a state claim, so too does a federal court sitting in Illinois. *Thomas v. L'Eggs Prods., Inc.*, 13 F. Supp. 2d 806, 808 (C.D. Ill. 1998). The IHRA, like Title VII and the ADA, prohibits sexual harassment and disability discrimination. *Id.* 5/2-102(D) (sexual harassment); *id.* 5/2-102(A) ("unlawful discrimination"); *id.* 5/1-103(Q) (defining "unlawful discrimination" to include discrimination based on "handicap"). Defendants theorize that, as between the state tort and federal discrimination claims, "the overlap of facts is so precise" that the tort claims are preempted. (Defs.' Mem. Supp. Mot. Dismiss at 10.)

Defendants overstate the scope of preemption under the IHRA. Whether a common law claim is so displaced "depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). Mere factual overlap is not decisive. The Act was not intended to preempt all tort claims arising out of actions it prohibits. *Id.* at 24. Rather, the critical question is whether the plaintiff can "establish the necessary elements of the tort independent of any *legal duties* created by the Act." *Id.* (emphasis added).

2

Each of Arnold's tort claims is grounded in legal duties independent of the IHRA. Most fundamentally, the duty not to intentionally and knowingly inflict severe emotional distress derives from common law, not statutory law. That extreme and offensive conduct might also constitute sexual harassment or disability discrimination under state or federal civil rights laws does not affect the viability of a tort claim for intentional infliction of emotional distress ("IIED"). *Jackson v. Local 705 Int'l Bhd. of Teamsters*, No. 95 C 7510, 2002 U.S. Dist. LEXIS 4908, at *47 (N.D. Ill. Mar. 22, 2002).

Neither are the negligent retention, training, and supervision claims preempted. Employers have a duty not to retain employees where it is reasonably foreseeable that doing so will lead to a particular type of harm to a third person. *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998). So too employers sometimes have a duty to protect their employees from an "imminent danger of serious harm." Restatement (Second) of Agency § 512(1) (1958). Arnold's theory is that defendants knew or should have known that supervisors and employees had inflicted severe emotional distress on her and were likely to continue doing so. Retaining such employees and failing to train or supervise them may have amounted to actionable negligence quite apart from any duties created by the IHRA. *Cf. Ofoma v. Armour*, No. 97 C 6420, 1998 U.S. Dist. LEXIS 11052, at *11 (N.D. Ill. June 22, 1998) (holding that a negligent supervision claim based on a failure to prevent assault and battery was not preempted).

Defendants' reliance on *Geise v. Phoenix Co.*, 639 N.E.2d 1273 (Ill. 1994), is misplaced. As a preliminary matter, it should be noted that *Maksimovic*, decided in 1997, greatly clarified the relevant legal analysis. In any event, *Geise* is distinguishable from the case at bar. The court in *Geise* held that the Act preempted negligent supervision and hiring claims because those

3

claims were based exclusively on the prohibition against sexual harassment. *Id.* at 1277. At its core, the tort theory was simply that the employer negligently allowed sexual harassment to take place. There was no allegation of any common law tort committed by the employees. In contrast, Arnold seeks to hold defendants liable for negligently failing to prevent the intentional infliction of emotional distress. This negligence theory, unlike the theory in *Geise*, can stand independent of legal duties created by the IHRA.

## II. Illinois Workers' Compensation Act

Defendants argue that Arnold's tort claims are barred by the exclusivity provisions of the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/5(a), 305/11 (West 1993 & Supp. 2002). Section 5(a) provides, in pertinent part:

> No common law or statutory right to recover damages from the employer . . . for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act . . . .

Section 11 states, among other things, that the compensation provided by the IWCA "shall be the measure of the responsibility" of an employer. "To escape the bar of these sections, plaintiff would have to prove either that the injury (1) was not accidental, (2) did not arise from his or her employment, (3) was not received during the course of employment, or (4) was noncompensable under the Act." *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 202 (Ill. 1980).

Although this language indicates that the plaintiff may ultimately bear the burden of proof as to the applicability of one of these four exceptions, the plaintiff need not include such facts in the complaint. The IWCA "provides employers with . . . an affirmative [defense] whose elements—the employment relationship and the nexus between the employment and the

4

injury—must be established by the employer, and which is waived if not asserted by him in the trial court." *Doyle v. Rhodes*, 461 N.E.2d 382, 386 (Ill. 1984); *see also Acuff v. IBP, Inc.*, 77 F. Supp. 2d 914, 922 (C.D. Ill. 1999) (IWCA bar "must be pleaded and proven by the employer"). Once the employer raises the defense and establishes these two elements, the burden apparently shifts to the employee-plaintiff to prove one of the four exceptions as explained in *Collier*. However, complaints in federal court need not anticipate or plead around affirmative defenses. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing Fed. R. Civ. P. 8(c) (defendant must plead any "matter constituting an avoidance or affirmative defense")). Because IWCA exclusivity is an affirmative defense, dismissal on a Rule 12(b)(6) motion is appropriate only where the defense is conclusively established by the complaint, concessions made by the plaintiff, or any other material appropriate for judicial notice. *Cf. McKee v. Brady*, No. 88 C 20035, 1990 U.S. Dist. LEXIS 19151, at *13 n.3 (N.D. Ill. May 14, 1990) (rejecting argument that the burden ever shifts to plaintiff to show facts sufficient to overcome the affirmative defense of statute of limitations on a motion to dismiss).

Arnold may be able to adduce facts consistent with her complaint to overcome the exclusivity defense with respect to her IIED claim. Arnold's only[1] potential escape hatch is the "accidental" requirement.

> The exclusivity provisions will not bar a common law cause of
> action against an employer . . . for injuries which the employer or
> its alter ego intentionally inflicts upon an employee or which were
> commanded or expressly authorized by the employer. The

---

[1] The injuries alleged clearly arose from her employment and were received during the course of employment. In addition, IIED by a coemployee is compensable under the Act. *Collier*, 408 N.E.2d at 202. The second, third, and fourth *Collier* exceptions are therefore unavailable.

5

> rationale advanced in support of this rule is that the employer
> should not be permitted to assert that the injury was "accidental,"
> and therefore under the exclusive provisions of the Act, when he
> himself committed the act.

*Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1226 (Ill. 1990) (citations omitted). Although mere supervisory status is insufficient, a co-employee qualifies as an "alter ego" for purposes of the IWCA if the co-employee, "in a practical sense, speaks for the company." *Crissman v. Healthco Int'l, Inc.*, No. 89 C 8298, 1992 U.S. Dist. LEXIS 13167, at *23-24 (N.D. Ill. Sept. 1, 1992). Arnold alleges that "supervisors, employees, and agents" of defendants mistreated her. (Compl. ¶¶ 15-19.) These supervisors may well have had sufficient decisional and policy-making authority to be considered the defendants' alter egos. But this is not the only alter ego theory suggested by Arnold's complaint. Arnold alleges that the misconduct took place over an extended period of time, that she made numerous complaints, and that her complaints led to a retaliatory demotion and other adverse conditions of employment. At least one Illinois court has held that where superiors, in their official capacity, engage in an extended pattern of abusive conduct, they may qualify as alter egos of the employer. *Johnson v. Fed. Reserve Bank*, 557 N.E.2d 328, 332 (Ill. App. Ct. 1990). Such a pattern can also give rise to an inference that the employer expressly authorized its employees' misconduct. *Cline v. Gen. Elec. Capital Auto Lease, Inc.*, 757 F. Supp. 923, 931 (N.D. Ill. 1991).

Arnold's negligence claims, on the other hand, are barred by the exclusivity provisions of the IWCA. An act of negligence, even if committed by the employer itself, is "accidental" for purposes of the IWCA. Accordingly, "[t]he IWCA abrogates employer liability for all common law negligence claims . . . ." *Walker v. Doctors Hosp.*, 110 F. Supp. 2d 704, 714 (N.D. Ill. 2000).

6

Arnold seeks to avoid dismissal on this ground by asserting that Counts IX through XII, despite being labeled as negligence claims, actually state intentional tort claims. In support of this assertion, Arnold points to the allegation in each count that defendants' actions were "intentional, wilful and wanton, and done with reckless disregard" for her rights. (Compl. ¶¶ 107, 116, 122, 128.) Even assuming that the word "intentional" in this context provided defendants with adequate notice of these hidden causes of action, none of them states a claim.

The last three counts concern retention, training, and supervision. Although willful and wanton misconduct by an employer can give rise to a claim in Illinois, such claims, like ordinary negligence actions, are barred by the IWCA. *Lannom v. Kosco*, 634 N.E.2d 1097, 1100-01 (Ill. 1994). Only genuinely intentional torts fall outside the IWCA exclusivity provisions. *Mier v. Staley*, 329 N.E.2d 1, 8 (Ill. App. Ct. 1975). There is, however, no such thing as intentionally wrongful retention, training, or supervision. The reason is not, as defendants suggest, merely because no case uses an oxymoronic phrase like "intentional negligent retention." An interest protected against negligent violations is necessarily protected against intentional ones. *See* Restatement (Second) of Torts § 281 cmt. b (1965) (explaining that a negligence claim requires that "the interest which is invaded must be one which is protected, not only against acts intended to invade it, but also against unintentional invasions"). A *more* culpable mental state is generally not a defense in tort.

The nonexistence of these intentional tort theories is more than a matter of nomenclature. There is no independent common law duty to retain, train, or supervise employees in a particular way. Thus, for an employer to be liable for negligence or misconduct in retaining, training, or supervising an employee, the employee must have committed an independently actionable

7

wrong. If the employer actually intended the employee's actions, then the employer is directly liable for those actions. *Cf.* Restatement (Second) of Torts § 8A (defining "intent . . . to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it"). A claim for intentional misconduct arising from actions of the employer that facilitated the employee's tortious conduct would be entirely redundant. In the case at bar, Arnold alleges two types of legal wrongs on the part of defendants' employees: discrimination and intentional infliction of emotional distress. To the extent her retention, training, and supervising claims are based on the duty not to discriminate, they are preempted by the IHRA. To the extent these claims derive from the duty not to intentionally inflict emotional distress, they are redundant with the IIED claim. Hence, Counts X through XII must be dismissed.

Count IX is styled "negligent misrepresentation." Arnold's attempt to convert this count into an intentional tort also fails, but for a different reason. There is actually a tort in Illinois called "intentional misrepresentation." It is also known as fraud, *Hofner v. Glenn Ingram & Co.*, 489 N.E.2d 311, 315 (Ill. App. Ct. 1985), and it must be pleaded with particularity, Fed. R. Civ. P. 9(a). A plaintiff must allege "the who, what, where, and when of the alleged fraud." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Arnold fails to do so here. For starters, the complaint includes no indication whatsoever of when the alleged misrepresentation took place. Count IX is therefore dismissed without prejudice.[2]

---

[2] Although the court expresses no opinion on the matter, it appears quite unlikely that Arnold will be able to amend her complaint to state a claim for fraud. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 683 (Ill. 1989) ("[M]isrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud.").

8

## III. Statute of Limitations

Defendants argue first that Arnold's federal claims are time-barred. The statute of limitations is an affirmative defense, so this argument can prevail at this stage of proceedings only if the defense is conclusively established based on the allegations in the complaint, concessions of the plaintiff, or any other material appropriate for consideration on a motion to dismiss. *Cf. Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (stating that if a party "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court"). Filing a charge with the Equal Employment Opportunity Commission within 300 days of an alleged discriminatory act is a prerequisite to bringing a Title VII or ADA claim. *See* 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 662 (7th Cir. 1997). Arnold apparently filed her first EEOC charge on May 7, 2001. Defendants argue that Counts I through VI should be dismissed insofar as they are premised on events that took place more than 300 days earlier (in other words, on or before July 11, 2000).

Because Arnold does not put precise dates on any of her allegations of wrongdoing, it is impossible to rule out the possibility that almost all of the misconduct took place after July 11, 2000. There are two exceptions: (1) Arnold alleges that she "was subjected to a repeated pattern of sexual harassment . . . from the inception of her employ," which she dates "on or about May 1995" (Compl. ¶¶ 10, 15); and (2) Arnold alleges that, during a temporary disability leave period starting "on or about April 18, 2000," defendants "continuously" contacted her (Compl. ¶¶ 23-28). It would be unreasonable to suppose that Arnold's estimate of her start month is off by more than five years or that she erred by almost three months in remembering the date on which a four-

9

month leave period commenced. This means that some of actions allegedly constituting harassment and failure to accommodate must have occurred outside the limitations period. On the basis of her complaint, therefore, allegations underlying her sexual harassment and reasonable accommodation claims (Counts II and VI) are the only ones in any danger of being time-barred.

Even here, dismissal for untimeliness would be inappropriate. Arnold may well be able to adduce facts consistent with her complaint to show that the sexual harassment and failure to accommodate claims are based on "continuing violations."[3] "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997). "[D]uration is often necessary to convert what is merely offensive behavior, and therefore not actionable under Title VII, into an actionable alteration in the plaintiff's working conditions." *Id.* Just as there is no magic number of incidents that give rise to a hostile work environment claim, *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001), there is no magic number of years. That Arnold, with the full benefit of hindsight, now recognizes that she was subjected to a repeated pattern of harassment starting in 1995 says little about when exactly she was first put on notice of the claim. It is impossible to say for sure that this happened before July 11, 2000. The same could be said with respect to Arnold's accommodation claim. Perhaps it took some time for Arnold to realize that her employer was being unreasonable in failing to

---

[3]Defendants object to Arnold's invocation of the continuing violation doctrine on the ground that "she never pled it." (Reply at 1.) Of course, plaintiffs are not required to anticipate and plead facts sufficient to rebut an affirmative defense.

accommodate her disability. For example, the initial contacts during her disability leave may have involved follow-up work or questions concerning past assignments that no other employee could reasonably have handled. Arnold specifically alleges that "[d]efendant Jannsen said they would accommodate Plaintiff's disability . . . ." (Compl. ¶ 27.) It might well have been reasonable for Arnold to have given her employer a few months to make good on such promises.

Defendants' argument that the state law claims are untimely fails for essentially the same reason. The statute of limitations for Arnold's intentional infliction of emotional distress ("IIED") and related negligence claims is two years. *See* 735 ILCS 5/13-202; *Dahl v. Fed. Land Bank Ass'n*, 572 N.E.2d 311, 314 (Ill. App. Ct. 1991) (holding that "intentional infliction of emotional harm is a species of 'injury to the person' and is therefore governed by the limitation period set out in section 13-202 of the Code of Civil Procedure"). According to defendants, this precludes Arnold from recovering for injuries suffered prior to October 23, 1999, two years before she filed this complaint. However, the Illinois Appellate Court consistently applies a "continuing violation rule" that is even more expansive than the doctrine employed by the Seventh Circuit. *See Pavlik v. Kornhaber*, 761 N.E.2d 175, 187 (Ill. App. Ct. 2001) ("[W]here, as here, the acts are continuous, by the same actor, and of a similar nature, the prescriptive period for intentional infliction of emotional distress does not commence until the last act occurs or the conduct is abated."). The Illinois Supreme Court has recently suggested that it may not be entirely satisfied with this line of cases, noting the tension between the appellate court's formulation of the rule and the general discovery rule governing the accrual of claims. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 192 (Ill. 2002). The Seventh Circuit's version of the continuing violation doctrine avoids this tension by excluding violations

11

that reasonably should have been discovered outside the limitations period. This court believes that Illinois courts will eventually adopt a doctrine equivalent to the "continuing violation" doctrine applied by the federal courts in this circuit. Hence, the analysis outlined above applies equally to Arnold's state tort claims and demonstrates their timeliness.

## IV. Failure to State a Claim

Defendants attack Arnold's state claims on their merits, arguing that with respect to each she has failed to adequately state a claim. "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The court assumes the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). Under the federal system of notice pleading, "although plaintiffs can plead conclusions, the conclusions must provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995). Because the other state claims fail for other reasons, only the IIED and breach of contract claims require discussion.[4]

### A. Intentional Infliction of Emotional Distress

To establish an IIED claim under Illinois law, a plaintiff must prove that: (1) the conduct involved was "truly extreme and outrageous"; (2) the defendants intended for their conduct to inflict severe emotional distress or should have known that there was a high probability of such

---

[4] Although the court expresses no opinion on the matter, Count IX appears to fail to state a claim for negligent misrepresentation. *See Dougherty v. Akzo Nobel Salt, Inc.*, 47 F. Supp. 2d 989, 992 (N.D. Ill. 1999) ("While other jurisdictions may permit the tort of negligent misrepresentation in employment situations, Illinois does not.").

12

distress; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "The intensity and duration of the distress are factors to be considered in determining its severity." *Id.* (quoting Restatement (Second) of Torts § 46, cmt. j, at 77-78 (1965)). Conduct is extreme and outrageous where "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46, cmt. d, at 73).

Arnold's allegations suffice to state a claim of IIED in a notice pleading regime. Arnold alleges that, despite numerous complaints, she was subjected to a repeated pattern of sexual harassment for almost six years, including inappropriate comments, gestures, and conduct by male supervisors. Rather than addressing Arnold's complaints, defendants retaliated by failing to promote her, demoting her, excluding her from meetings, and restricting her job functions and assignments. Although the complaint lacks specificity as to particular incidents, it is entirely possible that Arnold will be able to adduce facts consistent with these allegations that would arouse resentment against defendants among an average member of the community. The six-year duration of the wrongdoing supports a showing of severity. *McGrath*, 533 N.E.2d at 809. And the abuse of advisory authority aggravates the atrociousness of the alleged iniquity. *See id.* ("The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment."). Illinois courts have held that sexual harassment by an employer can qualify as extreme and outrageous conduct for

13

purposes of establishing an IIED claim. *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251 (Ill. App. Ct. 1990).

The cases cited by defendants in support of a contrary result are not convincing. Because Illinois is a fact-pleading jurisdiction, reliance on state court dismissals is misplaced. The only published[5] Seventh Circuit case, *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702-03 (7th Cir. 1993), includes no allegations of sexual harassment (but does include a dissenting opinion on the issue of whether the IIED claim was properly dismissed). Several of the district court cases cited by defendants also lack any alleged incidents of sexual harassment. *Pudil v. Smart Buy, Inc.*, 607 F. Supp. 440 (N.D. Ill. 1985); *Stoecklein v. Ill. Tool Works, Inc.*, 589 F. Supp. 139 (N.D. Ill. 1984). Others expressly recognize that unwanted touching and offensive comments can constitute extreme and outrageous conduct. *See Henderson v. Hilton Hotels Corp.*, No. 92 C 7584, 1994 U.S. Dist. LEXIS 17319, at *27 (N.D. Ill. Dec. 5, 1994) ("Henderson has not alleged . . . that anyone at Hilton repeatedly subjected her to offensive touchings and sexual remarks sufficient to constitute a pattern of harassment over a long period of time."); *Jaskowski v. Rodman & Renshaw, Inc.*, 813 F. Supp. 1359, 1363 (N.D. Ill. 1993) (dismissing IIED claim because potentially extreme and outrageous conduct, "namely the unwanted touching and offensive comments," could not be attributed to the defendants).

---

[5]Defendants also cite *Laird v. Cragin Fed. Bank*, 41 F.3d 1510 (7th Cir. 1994), without indicating that this is an unpublished opinion. The citation of unpublished opinions is forbidden by Seventh Circuit rules.

14

B. Breach of Contract

Finally, defendants argue that Arnold fails to state a claim for breach of contract. Arnold's contract claim is based on defendants' "Sexual Harassment Policy" and "CREDO." The Illinois Supreme Court has held that

> an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

*Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987). Whether a particular statement constitutes a contract is a question of law. *Barfield v. Village of Winnetka*, 81 F.3d 704, 709 (7th Cir. 1996). Arnold alleges that defendants promulgated both statements to her before she began working for the defendants and that she "had a right to rely on" these statements. Viewing these allegations in the light most favorable to Arnold, she has clearly pleaded the second and third elements set forth in *Duldulao*.

This leaves only the first element. The complaint includes a copy of neither the sexual harassment policy nor the credo. Although defendants find this omission upsetting, federal courts, unlike Illinois state courts, do not require that critical documents be attached to the complaint. *Mount Hawley Ins. Co. v. Guardsmark, Inc.*, No. 01 C 5088, 2001 U.S. Dist. LEXIS 9196, at *3-4 (N.D. Ill. July 2, 2001). *Compare* Fed. R. Civ. P. 8(a) (requiring only a "short and plain statement of the claim"), *and* Fed. R. Civ. P. 9 (outlining special pleading rules, none of

15

which requires quoting contractual language or attaching documentation), *with* 735 ILCS 5/2-606 (requiring attachment or recitation of written instrument if that document is the foundation of a claim). One might plausibly infer from Arnold's allegation that she "had a right to rely on" these statements that such reliance was reasonable. If Arnold had stopped there, this count in its entirety would have survived defendants' motion to dismiss.

Arnold did not, however, leave well enough alone; she attached a copy of the credo to her response brief. Although extrinsic documents are generally not considered on a motion to dismiss, there is an exception for documents that are referred to in the complaint and are central to one of plaintiff's claims. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994). The credo plainly falls within this exception, so the court will examine it. Of relevance to Arnold's claim, the credo provides:

> We are responsible to our employees, the men and women who work with us throughout the world. Everyone must be considered as an individual. We must respect their dignity and recognize their merit. They must have a sense of security in their jobs. . . . [W]orking conditions [must be] clean, orderly, and safe. . . . Employees must feel free to make suggestions and complaints. There must be equal opportunity for employment, development and advancement for those qualified. We must provide competent management, and their actions must be just and ethical.

(Resp. Ex. A.) Most of this language amounts to nothing more than a vague promise that the company "will treat its employees fairly," which is not sufficient under Illinois case law to support reasonable reliance by an employee. *Brown v. R.R. Donnelly & Sons Co.*, 650 N.E.2d 8, 10 (Ill. App. Ct. 1995); *see also Lee v. Canuteson*, 573 N.E.2d 318, 322 (Ill. App. Ct. 1991) (holding that "it is the sincere intent of [employer] to be fair and reasonable with all employees at all times" was not clear enough promise to constitute an offer).

16

It is true that the credo uses mandatory words like "must" rather than purely hortatory or discretionary verbiage. *See Svigos v. Petry Television, Inc.*, 1996 U.S. Dist. LEXIS 9558, No. 95 C 5899, 1996 WL 388416, at *2 (N.D. Ill. July 9, 1996) ("Unequivocal and mandatory handbook language such as 'shall' or 'must' creates a clear promise."). But this is not a magic words test. Here, defendants promise only uncertain things like respect for individual dignity, recognition of merit, safety, and just and ethical treatment. The credo nowhere purports to create specific rights among employees. *See Jones v. SABIS Educ. Sys.*, 52 F. Supp. 2d 868, 874-75 (N.D. Ill. 1999) (holding that statement could not support contract liability because the statement "[did] not speak in terms of employee rights, but rather, of employer duties"). In some sentences, the employer promises nothing at all, but merely states in general terms that "employees must feel free . . ." and that "there must be . . . ." To be sure, much of what Arnold alleges is obviously inconsistent with the goals set forth in the credo, but that is not the relevant legal question. The language of the credo contains no promise clear enough to lead an employee to reasonably believe that an offer has been made. Arnold's breach of contract claim, to the extent it relies on the credo, is therefore dismissed.

Neither side has provided the court with the relevant language from the sexual harassment policy. It is therefore impossible to evaluate the merits of defendants' contention that the policy, like the credo, contains no sufficiently definite promises. As explained above, one can reasonably infer a clear promise from Arnold's allegation that she had a right to rely on the policy. Defendants argue that the sexual harassment policy lacks consideration because it imposes no duties on the employer beyond those already required by law. Again, without the policy before the court, it is impossible to evaluate this argument. Defendants' motion to dismiss

17

the contract claim, to the extent it is grounded on breach of the sexual harassment policy, is denied.

**Conclusion**

To summarize, Arnold's federal claims (Counts I-VI), along with her IIED claim (Count VII), remain fully intact. Although some of the alleged misconduct eventually may be found to be time-barred, it is too early to make that determination. Arnold's breach of contract claim (Count VIII), to the extent it relies on the credo, is dismissed. No statement in the credo is sufficiently definite to constitute an offer. The residue of the contract claim, grounded on the sexual harassment policy, survives. Count IX, dubbed "negligent misrepresentation," is dismissed. As a negligence claim, it is barred by the exclusivity provisions of the IWCA. As a fraud claim, it is not pleaded with particularity. The remainder of Arnold's claims (Counts X through XII), to the extent they allege a state of mind less than intent, are similarly barred by the IWCA. If Arnold alleges intent in those counts, then she fails to state a tort claim independent of her IIED claim.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: August 9, 2002

18