**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ASHLEY ARNOLD,            )<br>                                                 )<br>     Plaintiff,                        )<br>                                                 )<br>     v.                                     )<br>                                                 )<br>JANSSEN PHARMACEUTICA, INC. )<br>and JOHNSON & JOHNSON, INC.,   )<br>                                                 )<br>     Defendants.                    ) | Case No. 01 C 8138<br><br>Magistrate Judge Morton Denlow |

## MEMORANDUM OPINION AND ORDER

This case raises the important question of what duties are imposed upon an attorney to discuss and resolve the obligation by a client to a former attorney under a contingent fee agreement when the new attorney is aware of the prior attorney and enters into a new contingent fee agreement with the client. This case comes before the Court to resolve a $13,500 claim brought by the law firm of Hubbard & O'Connor Ltd. ("Hubbard law firm") against its former client Ashley Arnold Vaccaro ("Arnold"or "Plaintiff"). The Hubbard law firm claims Plaintiff owes it $13,500 arising out of a settlement agreement entered into between Plaintiff and Janssen Pharmaceutica, Inc. and Johnson & Johnson, Inc. (collectively "Defendants") in the underlying lawsuit. The Court conducted an evidentiary hearing on

February 22, 2006. The Court has carefully considered the testimony of the four witnesses[1] who testified at the hearing, the exhibits received in evidence, the written submissions of the parties, and the arguments of counsel.

The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings of fact may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall also be considered findings.

## I. BACKGROUND FACTS

**A.     FILING OF SUIT AND SUBSTITUTIONS OF COUNSEL.**

On October 23, 2001, the Best, Vanderlaan & Harrington law firm ("Best law firm") filed suit on behalf of Plaintiff against Defendants alleging violations of the Americans with Disabilities Act. 42 U.S.C. § 12101 *et. seq.* Dkt. 1[2]. On September 5, 2002, the Best law firm was granted leave to withdraw from the case pursuant to a motion to substitute counsel. Dkt. 42-43. On or about October 22, 2002, the Best law firm served a notice of attorney's lien. See Dkt. 178, Ex. B.

On September 5, 2002, the law firm of Keith L. Hunt & Associates ("Hunt firm"), entered its appearance for Plaintiff and later withdrew its appearance on February 14, 2003. Dkt. 43-4, 55-6. The Best law firm and the Hunt firm entered into contingent fee agreements

---

[1] The witnesses were John O'Connor ("O'Connor"), Elizabeth Hubbard ("Hubbard"), Arnold and her husband James Vaccaro ("Vaccaro").

[2] Dkt. ___ refers to the docket number of the pleading.

2

with Plaintiff that allocated each of them one-third of any settlement. T. 69.[3]

On March 27, 2003 Plaintiff met with O'Connor to discuss whether the Hubbard law firm would undertake her case. T. 7. During their discussions, O'Connor described a contingent fee arrangement of 33-1/3% of the gross value of any settlement or 40% of the gross value of a judgment or verdict. *Id.* In addition, Plaintiff would pay a $3,500 fee retainer to be credited against attorney's fees or costs, and she would be required to pay out-of-pocket costs. *Id.* At no time during these discussions did O'Connor agree with Plaintiff that she would remain responsible for any attorney's fees claimed by the Best law firm or the Hunt firm. T. 36. Plaintiff testified that when she asked O'Connor about the prior attorneys, O'Connor explained that in the event of a dispute, a judge would divide the 33-1/3% contingent fee among the attorneys. T. 70-1. O'Connor denies discussing the topic of the prior counsel's fees before entering into the written Fee Agreement. T. 110. O'Connor was aware that she had signed fee agreements with two other firms. T. 114.

On April 7, 2003, O'Connor sent Plaintiff two copies of a draft attorney-client agreement ("Fee Agreement"). T. 8, Hubbard Ex. A.[4] The cover letter does not mention who would be responsible for the fees of prior counsel. Plaintiff signed and returned the Fee Agreement to the Hubbard law firm on April 22, 2003. Ex. A. The Fee Agreement also fails to mention who would be responsible for fees claimed by the Best law firm. T. 36. The

---

[3]T. __ refers to the February 22, 2006 trial transcript.

[4]The Hubbard law firm's Exhibits are attached to its Memorandum in Support of Amended Motion for an order requiring Arnold to comply with the settlement agreement.

Hubbard law firm never bargained with Plaintiff regarding the issue of prior counsel's fees until the settlement. *Id.* The only reference to other counsel is contained in paragraph 2 under Additional Matters, which states:

> Co-Counsel:
>
> The client authorize [sic] Attorney to obtain the services of any of-counsel or co-counsel as the situation may arise, provided Attorney provides client with notice. Utilization of co-counsel shall not require any payments from client for legal fees to co-counsel.

Hubbard Ex. A, p. 3.

On April 25, 2003, the Hubbard law firm entered its appearance on behalf of Plaintiff and continued to represent Plaintiff through the settlement of the underlying litigation. Dkt. 59. The Hubbard law firm withdrew its appearance once this fee dispute arose with Plaintiff. On February 15, 2006, George Collins entered his appearance on behalf of Plaintiff. Dkt. 202.

**B.  SETTLEMENT OF SUIT AND BEST LAW FIRM'S ATTORNEY LIEN.**

The Best law firm's lien impeded settlement because Defendants insisted that it be resolved as a condition of any settlement. T. 12. The Hubbard law firm believed the lien was defective. *Id.* Plaintiff did not want to pay the Best law firm any money. *Id.* The Hubbard law firm explained to Plaintiff that even if the lien was defective, the Best law firm could still sue her on a *quantum meruit* theory in state court. T. 13. The Hubbard law firm discussed the possibility of setting up a reserve from Plaintiff's portion of the settlement to resolve the lien. T. 14.

4

On or about August 12, 2005, the litigation was settled in principle between Plaintiff and Defendants. T. 15. On August 25, 2005, Plaintiff presented a motion to adjudicate the Best law firm's lien. Dkt. 178. The Best law firm was seeking $150,000 in fees and threatening to file a *quantum meruit* action in state court. T. 16.

Judge Mark Filip conducted a settlement conference and resolved the attorney lien issue. A term sheet ("Term Sheet") was completed. Best law firm motion to enforce, Ex. A. Dkt. 190 (Exhibits filed *in camera*). The Term Sheet was executed by Hubbard on behalf of Plaintiff and the Hubbard law firm, by James F. Best on behalf of the Best law firm, and by counsel for Defendants. *Id.* The Term Sheet provided, in relevant part, as follows:

> 1. Payment of $32,000 (Thirty-Two Thousand Dollars) to Plaintiff's Former counsel, Best, Vanderlaan & Harrington (BV & H).
>
> * * *
>
> 5. The $32,000 will be paid $5,000 by Defendant, and $27,000 in two equal parts by Plaintiff and her current counsel.

A Settlement Agreement and Release of all claims ("Settlement Agreement") was executed by Plaintiff, the Hubbard law firm and Defendants in October, 2005. *Id.*, Ex. B. The Settlement Agreement provides in relevant part as follows:

> 12. **Enforcement of this Agreement.** The parties agree that the United States District Court for the Northern District of Illinois may retain jurisdiction for the sole purpose of enforcing the terms of this Agreement, and that the Court should apply federal and Illinois law in any such enforcement proceeding, and will award reasonable attorneys' fees and costs to the party prevailing in any motion seeking enforcement.

* * *

14. **Release of Lien.** ... In consideration of the release of the lien held by Plaintiff's former law firm, Best Vanderlaan & Harrington ("Best Vanderlaan"), Best Vanderlaan, Arnold, Hubbard & O'Connor, Ltd. and Defendants have agreed that Best Vanderlaan will be paid the gross sum of thirty-two thousand dollars ($32,000.00) in full and final release of any and all liens against the instant settlement. Best Vanderlaan has executed a complete release and satisfaction and waiver of any and all claims by it against Defendants, its officers, directors, agents, etc. and a complete waiver of claims against Arnold and/or Hubbard & O'Connor Ltd. for costs and fees incurred in connection with this matter. A true and correct copy of this release and satisfaction and waiver is attached hereto as Exhibit B. This agreement and the payment are subject to full and mutual confidentiality.

    Payment of the gross amount of $32,000.00 shall be made as follows:

    • Defendants shall pay the gross sum of five thousand dollars ($5,000.00) to Best Vanderlaan, which will provide Defendants' counsel with its tax identification number and be liable for and hold Defendants harmless for any taxes payable as a consequence of this payment;

    • Arnold and Hubbard & O'Connor, Ltd. will pay the gross sum of twenty-seven thousand dollars ($27,000.00) in two equal parts to Best Vanderlaan, i.e., thirteen thousand five hundred dollars ($13,500.00) from Arnold and thirteen thousand five hundred dollars ($13,500.00) from Hubbard & O'Connor.

Best law firm's motion to enforce, Ex. B. Dkt. 190. Judge Filip entered an order on October 31, 2005 retaining jurisdiction to enforce the Settlement Agreement for one year. Dkt. 184.

## C. TWO MOTIONS TO ENFORCE SETTLEMENT.

Defendants paid $5,000 to the Best law firm. Plaintiff sent the Best law firm $13,500. Contending that Plaintiff possessed the money, the Hubbard law firm did not transfer the Best law firm any money. Dkt. 198. The Best law firm filed a motion to require the Hubbard law firm to pay it the $13,500 it was promised. Dkt. 190. The Hubbard law firm filed a motion to enforce judgment claiming that Plaintiff should pay the additional $13,500 to the Best law firm. Dkt. 192.

Judge Filip referred these two motions to this Court. Dkt. 197. On January 31, 2006, this Court entered a report and recommendation regarding the Best law firm's motion to enforce the terms of the Settlement Agreement. Dkt. 201. The Court recommended that the Hubbard law firm pay the Best law firm $13,500 on or before February 6, 2006. The Hubbard law firm made the payment.

The remaining dispute involves the claim by the Hubbard law firm that Plaintiff should reimburse it $13,500 because Plaintiff received an additional $13,500 from Defendants under the Settlement Agreement that was intended for the Best law firm. Dkt. 198. The parties consented to this Court's jurisdiction to decide this issue. 28 U.S.C. § 636(c)(1). Dkt. 205-09.

**D.     THE SETTLEMENT BETWEEN PLAINTIFF AND DEFENDANTS.**

To understand the dispute between the Hubbard law firm and Plaintiff, the role the Best law firm's lien played in the settlement between Plaintiff and Defendants must be explained. In May 2005, Judge Filip denied in part and granted in part Defendants' motion for summary judgment. Dkt. 167-68. On August 12, 2005, the settlement discussions came to a head. T. 45. The Hubbard law firm worked diligently to produce a settlement for Plaintiff. T. 45-52. Defendants insisted that the Best law firm's lien claim be resolved as part of the settlement. T. 12. The Hubbard law firm did not reach agreement with the Best law firm on August 12, 2005. T. 50.

On August 25, 2005, with Judge Filip's assistance, an agreement was reached regarding the Best law firm's lien claim. T. 17. Thereafter, documents were prepared

7

reducing to writing the settlement terms among Plaintiff, Defendants, and the Best law firm.

On September 12, 2005, while providing calculations for the settlement, the Hubbard law firm made an allocation error. Ex. C, T. 21-3. In an e-mail to Hubbard, O'Connor stated, "By my calculations, BVH gets $32,000 (of which J & J pays $5,000 on top of the \*\*\*[5] settlement number); we get \*\*\*." Ex. C. These calculations were forwarded by the Hubbard law firm to Defendants' counsel. T. 21-22, Ex. C.

On September 23, 2005, Plaintiff sent O'Connor an e-mail inquiring about the specific allocation of her portion of the settlement for tax purposes. Ex. D. O'Connor answered her questions, explaining that $13,500 would be subtracted from her settlement proceeds and paid to the Best law firm. Ex. D.

On September 27, 2005, the Settlement Agreement draft was returned to the Hubbard law firm from Defendants' counsel for signatures. It did not create a separate line item for the $27,000 payments earmarked for the Best law firm from Plaintiff and the Hubbard law firm. T. 22. Rather, it increased the amounts to be paid to Plaintiff by $13,500 over her two-thirds share. T. 23, Ex. E. The Settlement Agreement was executed by Plaintiff on October 18, 2005. Dkt. 190, Ex. B.

On November 17, 2005, the Hubbard law firm discovered the drafting error, but did not ask Defendants to correct it. T. 23, 39. Instead, on that same day, the Hubbard law firm

---

[5]The settlement amount between Plaintiff and Defendants is confidential. Therefore, because the settlement amount does not affect this decision, the Court refers to the settlement amount or percentages of it as "\*\*\*."

8

sent Plaintiff an e-mail explaining that the Settlement Agreement incorrectly subtracted the Best law firm's payment from the Hubbard law firm and placed it into Plaintiff's allocation. T. 23, Ex. G.

The following day, on November 18, 2005, Plaintiff expressed confusion and requested confirmation that there were no negative tax ramifications. T. 24-25, Ex. H. Then, on November 21, 2005, Plaintiff stated that her tax accountant would "just need a revised settlement letter that lists these allocations." Ex. I.

On November 22, 2005, with the Settlement Agreement executed and in place, Plaintiff and O'Connor retrieved the settlement checks at defense counsel's office. T. 75. The checks were in the amounts set forth in the Settlement Agreement. T. 39-40.

E.  **THE $13,500 DISPUTE BETWEEN PLAINTIFF AND THE HUBBARD LAW FIRM.**

On Friday, December 2, 2005, Plaintiff sent O'Connor an e-mail stating that her accountant wanted the fee reimbursement handled separately from the settlement allocation reconciliation and the reconciliation of out-of-pocket costs. She wanted the Hubbard law firm to pay the Best law firm directly. T. 27-8, Ex. L.

On Monday, December 5, 2005, O'Connor responded to Plaintiff's proposal, informing Plaintiff that the Hubbard law firm would be "happy to redo the allocation / BVH payments as you proposed ... Accordingly, please send us a check for the remaining costs amount and our firm's payment to BVH and we will send you the $3,500 refund of your retainer fee." Ex. L.

9

Thereafter, Plaintiff disputed her obligation to pay to the Best law firm a total of $27,000. Although Plaintiff originally accepted O'Connor's statements that Defendants had not properly cut the checks, when she compared the checks to the Settlement Agreement she found they were correct. T. 78-80. On December 11, 2005, Vaccaro sent an e-mail to O'Connor asserting that the settlement checks were for the same amounts as those set forth in the Settlement Agreement, a position that no one has ever disputed. T. 108, Ex. M. O'Connor responded by forwarding the prior e-mails explaining the situation and thereafter restating the issue and the history of the discussions in a lengthy e-mail on December 19, 2005. Ex. M. Efforts to resolve this matter were not successful. Ex. M.

On December 29, 2005, the Hubbard law firm determined that Plaintiff's position on the issue of payment to the Best law firm had created a conflict of interest, advised Plaintiff in writing of this conflict, withdrew as her attorneys, and urged her to seek new counsel. Ex. N. The decision to withdraw, along with yet another reiteration of the amounts overpaid to Plaintiff, was confirmed in a January 4, 2006 letter from Hubbard to Plaintiff. Ex. O.

## II. ISSUES PRESENTED

The following issues are presented to this Court:

1) Whether the Hubbard law firm was obligated to discuss and to reach agreement with Plaintiff on the issue of who would be responsible in the event the Best law firm sought fees out of the settlement proceeds.

2) Whether Plaintiff must reimburse the Hubbard law firm for $13,500 out of her two-thirds share of the settlement proceeds.

## III. THE HUBBARD LAW FIRM'S OBLIGATIONS

The United States District Court for the Northern District of Illinois has adopted local rules 83.50.1 through 83.58.9 as its Rules of Professional Conduct ("Local Rules"). These rules are patterned after the 1983 version of the American Bar Association Model Rules of Professional Conduct ("Model Rules"). The Local Rules are in the form LR 83.5x.x where the x.x element of the local rule number is the same as the comparable ABA Model Rule. *See, e.g.*, LR 83.50.1.

This is a case of first impression under the Local Rules. This Court's reading of the Local Rules and two cases from other jurisdictions support the conclusion that the Hubbard law firm is not entitled to recover the $13,500 from Plaintiff where doing so would subject Plaintiff to the payment of a fee in excess of the one-third contingent fee agreed to in the Fee Agreement. *Galanis v. Lyons & Truitt,* 715 N.E.2d 858 (Ind. 1999); *Saucier v. Hayes Dairy Products, Inc.,* 373 So. 2d 102, 114 (La. 1979) (On Rehearing). A number of Local Rules relate to these issues.

First, LR 83.51.4(b) states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." There is no question that the amount of attorney's fees a client may be liable to pay is an important issue to any client. The Hubbard law firm was aware of the existence of prior counsel at the time it agreed to undertake representation for Plaintiff. Under these circumstances, it was incumbent upon the Hubbard law firm to discuss with Plaintiff whether her prior lawyers were paid, whether they had a potential claim for attorney's fees, and if so, who would be obligated to pay the outstanding fees. For example, if Plaintiff had previously

executed two contingent fees, each for one-third of the ultimate recovery, with the Best law firm and the Hunt firm, and then Plaintiff entered another one-third fee agreement with the Hubbard law firm, would all of Plaintiff's settlement proceeds go to the attorneys? If not, who would be responsible? This was clearly an issue that required discussion and resolution with Plaintiff before, or as part of, the Fee Agreement. The Fee Agreement entitled Plaintiff to two-thirds of the gross proceeds less the agreed upon deductions. The deduction for the Best law firm's fees was not set forth as a deductible item.

Second, LR 83.51.16(a)(4) provides:

> (a) A lawyer representing a client before a tribunal shall withdraw from employment (with permission of the tribunal if such permission is required), and a lawyer representing a client in other matters shall withdraw from employment, if:
>
> \* \* \*
>
> (4) the lawyer is discharged by the client.

The Committee Comments to this rule make it clear that a "client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." Therefore, once the Hubbard law firm was aware that Plaintiff had parted company with the two prior law firms, it knew that Plaintiff was liable for payment of legal fees, if any, that were outstanding. This topic should have been resolved and made clear in the Fee Agreement or other writing between the Hubbard law firm and Plaintiff.

Third, LR 83.51.5(a) requires that "[a] lawyer's fee shall be reasonable." Whether the Hubbard law firm's fee is reasonable depends in part on whether Plaintiff's recovery is

subject to other potential fee claims by her two prior attorneys. This is a material issue which did not arise until the case was on the verge of settlement. There is no indication that the Hubbard law firm reached any understanding with Plaintiff regarding her obligations to her prior attorneys. Although the Fee Agreement unambiguously states that the Hubbard law firm could partner with co-counsel at its expense, it is silent on the important issue of what would happen if the Best law firm asserted a claim for its fees.

Fourth, LR 83.51.5(c) permits contingent fees as follows:

> A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by section (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

The contingent fee agreement in this case calls for Plaintiff to pay attorney's fees to the Hubbard law firm in the amount of "33-1/3% of the gross value of the settlement." To the extent the Hubbard law firm did not assume liability for any portion of the fees owed to Plaintiff's prior counsel, it should have made that limitation of its liability clear in the Fee Agreement. In the absence of such a writing or other agreement, the risk falls on the Hubbard law firm.

A recent Indiana Supreme Court decision, interpreting rules of professional conduct

substantially similar to the Local Rules, supports this interpretation of the Hubbard law firm's obligations to Plaintiff.[6] *Galanis v. Lyons & Truitt* arose out of a suit brought by Suzanne Brown to recover damages for injuries she sustained in an automobile accident. 715 N.E.2d at 860. After her first lawyer withdrew due to a conflict of interest (and she discharged a second lawyer because of his failure to return her phone calls), Brown retained Robert Truitt of the firm Lyons and Truitt ("Lyons") to represent her. Attorneys from Lyons took several depositions and spent two and a half years preparing the case for trial. When Truitt was appointed to the Superior Court, Brown discharged the firm and retained Michael Galanis on a written contingent fee agreement under which Galanis would receive 40% of the gross amount recovered if the case settled or went to trial and an additional 10% if the case was appealed.

When Galanis met with Truitt to receive Brown's file, Truitt explained that his firm

---

[6]The Indiana Rules of Professional Conduct, like the Local Rules, are modeled on the Model Rules. The rule applicable to the duty of communication provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Ind. Rules of Prof. Conduct, 1.4(b). The rule applicable to contingent fees provides:

> A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

Ind. Rules of Prof. Conduct, 1.5(c).

had taken the case under a one-third contingent fee agreement pursuant to the written agreement between Brown and her first attorney. Approximately four months after Galanis assumed the case, Brown prevailed at trial, and the case subsequently settled for $200,000. After unsuccessful attempts to negotiate a payment for its work performed on the case, Lyons brought a declaratory judgment action requesting that the court determine Brown's obligations under the two contingent fee agreements. The trial court held that Lyons was entitled to a reasonable fee for the work that it performed on the case and that Galanis, not Brown, was responsible for any fee owed to Lyons. The Indiana Court of Appeals affirmed. *Id*.

On the question of Galanis' obligations to disclose to Brown the effect of her previous contingent fee agreement with Lyons, the Indiana Supreme Court held that, "[i]n a system of professional responsibility that stresses clients' rights, it is incumbent upon the lawyer who enters a contingent fee contract with knowledge of a previous lawyer's work to *explain fully any obligation of the client to pay a previous lawyer* and explicitly contract away liability for those fees." *Id*. at 863 (emphasis added). Galanis bore the responsibility to reimburse Lyons for its services because Galanis was in a better position than Brown to understand the contingent fee agreements and negotiate with Lyons a reasonable payment for Lyons' work. *Id*. Galanis could have discussed with Brown her obligation to Lyons and failed to do so; accordingly, "Galanis, not Brown, should bear the burden of his silence." *Id*. The court provided relatively brief analysis on this question, but seemed to focus on two factors: Galanis' knowledge of Lyons' contingent agreement with Brown and Galanis' level of sophistication vis-a-vis Brown, which created Galanis' liability for the fees owed to Lyons

from the final settlement agreement. Applying these factors to the underlying ethical rules, the court found that the rules required Galanis to fully explain to Brown her obligations to Lyons in the event of the resolution of the matter.

*Galanis* provides an instructive interpretation of the ethical duty of an attorney to fully advise the client of obligations owed to previous attorneys. Given the similarities between the Local Rules and the Indiana Rules of Professional Conduct, this Court reads the Local Rules to impose an obligation on attorneys negotiating contingent fee agreements to explain to clients the impact of other known outstanding contingent fee agreements with previous counsel.

In a similar case, the Louisiana Supreme Court held that where there is more than one attorney claiming a contingent fee, "only one contingency fee should be paid by the client, the amount of the fee to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed." *Saucier*, 373 So. 2d at 118. In that case, the plaintiff employed an attorney under a 33-1/3% written contingent fee agreement to represent him in a personal injury case. After approximately three years, the plaintiff discharged his attorney and retained a second attorney. The case was settled for $75,000 prior to trial. The first attorney intervened to recover his fees and the trial court awarded him $3,000. On appeal, the Court of Appeal increased the award to $25,000 or 33-1/3% of the recovery. 353 So.2d 732 (La. App. 1977). On certiorari, the Louisiana Supreme Court, over two vigorous dissenting opinions, affirmed the Court of Appeal holding that "an attorney discharged without cause prior to the completion of his services is entitled to the percentage fee stipulated in his

16

contingent fee contract, drawn and recorded in conformity with LSA-R.S.37:218, when the client subsequently recovers from the adverse party." 373 So.2d at 106.

On rehearing, the Louisiana Supreme Court, following a change in the composition of the Court's membership, reversed itself and limited the recovery by the attorneys to one reasonable contingent fee to be allocated by the court. The Court came to this conclusion for several reasons. First, the Court noted that clients have an absolute right to discharge an attorney. *Id.* at 116. This right is stripped of effect if the client's ability to exercise that right is conditioned upon his payment of the full amount specified in the contract. Second, the discharged attorney is entitled to a reasonable fee based on what he has earned. In order to balance these interests, the Louisiana Supreme Court held that the fees should be limited to one contingent fee based on the highest ethical contingency percentage and split among the attorneys. *Id.* at 118. The Court viewed this as a dispute between the attorneys stating:

> This court should not and will not countenance the payment of duplicitous and/or excessive fees. Nor will we allow the first attorney to be denied payment of the fee to which he is entitled. Therefore if the second attorney has already collected his contingent fee, and if the client ... asserts his right to recover from the second attorney the money paid to which the attorney is not entitled, that second attorney should be ordered to restore the same to [the client] as having been a payment of a thing not due. The second attorney, along with the first attorney, will then be accorded the opportunity to establish his right to receive an appropriate apportionment of the one contingent fee owed by [the client] for legal services rendered in connection with his claim.

*Id.* at 119 (citation omitted).

The logic of these cases is persuasive and this Court chooses to follow these decisions. The Hubbard law firm was in the best position to identify, discuss, and resolve this important

issue with Plaintiff before entering into the Fee Agreement. Its failure to do so limits Plaintiff's liability for fees to the amount agreed to in the Fee Agreement.

## IV. THE SETTLEMENT AGREEMENT DOES NOT ALTER PLAINTIFF'S LIABILITY FOR ATTORNEY'S FEES

The Hubbard law firm contends that under the terms of the Settlement Agreement Plaintiff agreed to pay the Best law firm $13,500 out of her two-thirds portion of the settlement and the Hubbard law firm agreed to pay the Best law firm $13,500 out of its one-third portion of the settlement. The Hubbard law firm also claims that due to a mixup in documenting the settlement, Plaintiff received an additional $13,500 over and above her two-thirds share of the settlement that represented the $13,500 that the Hubbard law firm was to pay to the Best law firm.

The settlement of the attorney's lien claim with the Best law firm occurred because this issue had not been addressed earlier. Thus, the Court holds that Plaintiff is not liable to pay the Best law firm out of her one-third share of the settlement proceeds absent a prior agreement to that effect.

## V. CONCLUSION.

The Hubbard law firm achieved a settlement for Plaintiff in this litigation. The Hubbard law firm knew there were pre-existing contingent fee lawyers in the case. As a result, the Hubbard law firm was required to discuss and resolve with Plaintiff the question of who would be responsible for possible claims by those attorneys to the settlement proceeds. This never happened. Therefore, the additional fees paid to settle the Best law firm's lien to the settlement proceeds must be borne by the Hubbard law firm. **Accordingly,**

**Hubbard & O'Connor's motion for an order requiring Plaintiff to comply with the Settlement Agreement is denied.**

**SO ORDERED THIS 26TH DAY OF APRIL, 2006.**

*Morton Denlow*

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

| | |
|---|---|
| John O'Connor | George B. Collins |
| Hubbard & O'Connor, Ltd. | Collins & Bargione |
| 900 West Jackson Blvd. | One North LaSalle Street |
| Suite Six West | Suite 2235 |
| Chicago, IL 60607 | Chicago, IL 60602 |
| | |
| Pro Se | Counsel for Plaintiff |